Filed 10/25/24  In re M.C. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re M.C., a Person Coming Under the Juvenile Court Law. | B327739, B332142 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. 22CCJP04814C |
| Plaintiff and Respondent, | |
| v. | |
| O.C., | |
| Defendant and Appellant. | |

APPEALS from orders of the Superior Court of Los Angeles County, Craig S. Barnes, Judge.  Affirmed.

David M. Yorton, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

———————————

A father appeals the juvenile court's orders requiring the father's visits with his daughter to be monitored.  He argues it was an abuse of discretion for the court to do so because monitored visits are not in the best interests of his daughter and only serve to punish him for failing to participate in his case plan.  We affirm.  The court's orders were proper in light of the father's history of violence towards the mother.

All statutory citations are to the Welfare and Institutions Code.

## I

The daughter is M.C., who was born in November 2019.  She lives with her mother, two older half-siblings, and maternal grandparents.

M.C.'s mother and father had known each other for about 10 years, and were in a relationship for three years as of October 2022.  They have never lived together and are not married, but agreed to co-parent M.C.  The father would visit M.C. at the mother's home every Monday, and the three would frequently go on an outing.

On one Monday in October 2022, the mother decided not to join the outing, saying that she did not feel well.  An argument ensued between the mother and father.  The father spit on the mother's face and grabbed her when she tried to walk away from him.   The father turned the mother around and wrapped his arms around her neck to choke her for about six seconds.  Her eyes rolled to the back of her head, but she did not lose

consciousness. After the father released the mother, she scratched him, and he ran away. The mother began to cry.

M.C.'s eldest half-sibling, H.S., who was 11 years old at the time, called 911 when she saw her mother crying. The mother had instructed H.S. to call the police if H.S. ever "sensed [the mother] was in danger." H.S. told the 911 operator: "there's a man harassing my mom right now."

Shortly after H.S. called 911, two police officers arrived at M.C.'s home. The mother told the officers what had happened and declined any medical care, but allowed the officers to take photographs of the bruises on her right arm and her neck. The mother also told the officers that there were nine previous unreported instances of domestic violence from the father.

During a call with a social worker from the Los Angeles County Department of Children and Family Services about one week later, the mother later recanted the statements she made in the police report about the father choking her. She claims the police officers pressured her to say that the father choked her. The mother said she felt bad that M.C. could not see her father.

In December 2022, the juvenile court authorized the Department to remove M.C. from the father's custody. The Department then filed a section 300 petition on behalf of M.C., based on the father's history of violence towards the mother and the mother's minimization of the father's conduct.

The juvenile court held the initial hearing and found the Department had made a prima facie showing under section 300. The court ordered that M.C. remain detained from the father, but granted the father monitored visitation. M.C. remained in her mother's physical custody.

In February 2023, the juvenile court held a combined jurisdiction and disposition hearing. The court ordered M.C. removed from the father's physical custody, and granted physical custody of M.C. to the mother. The father's reunification case plan consisted of a domestic violence batterer's intervention program, individual counseling to address his domestic violence and anger management issues, and monitored visitation with M.C. in a neutral setting.

The father then filed his first appeal from the jurisdiction and disposition hearing order.

In July 2023, the Department reported on all aspects of the family's maintenance plan. The father refused to cooperate with the Department's social workers and answer their questions, instead "plea[d]ing the 5th." He did not attend any of the programs required by his case plan. Nevertheless, the report indicated that the father had "very positive" visits with M.C. during the review period, stating "the father and daughter appear to be attached and bonded well as she appeared to be comfortable in her father's presence and able to effectively communicate her wishes . . . ." The Department concluded its report by recommending that the juvenile court terminate jurisdiction over M.C. and issue a final custody order giving joint legal custody to the mother and father, sole physical custody to the mother, and monitored visitation to the father.

In August 2023, the juvenile court held a review hearing, stating its tentative decision to adopt the Department's recommendation. When the father requested unmonitored visitation, the court responded as follows: "the concern I have is that there was pushback in terms of compliance. He was ordered to a 52-week [domestic violence] program, and I don't have

anything to indicate he's engaged in that or individual counseling. I've got a multiplicity of unreported [domestic violence] incidents in the presence of the child; and I've got a very, very young child here." The court ultimately adopted the Department's recommendation.

The father filed his second appeal from the judicial review hearing.

## II

At the father's request, we consolidated the second appeal (B332142) with his first (B327739).

The father's sole appellate contention is the juvenile court abused its discretion in granting him monitored visitation instead of unmonitored visitation. He claims the court is "punish[ing] [him] for not completing his case plan rather than considering what was in [M.C.]'s best interest."

We review juvenile court orders terminating jurisdiction and issuing exit orders for an abuse of discretion. (*In re M.R.* (2017) 7 Cal.App.5th 886, 902.)

*In re N.M.* (2023) 88 Cal.App.5th 1090 (*N.M.*), the main case the father relies on, does not help him. In *N.M.*, the juvenile court granted sole physical custody to the mother to avoid rewarding the father, who had not participated meaningfully in his case plan, but without making an express finding that this would be in the children's best interests. (*Id.* at p. 1095.) The Court of Appeal reversed, finding the order to be an abuse of discretion "because an exit order must serve the best interests of the children, not reward or punish one parent or another for failing to comply with the case plan." (*Ibid.*)

*N.M.* is readily distinguishable from this case. There was no evidence that N.M.'s father had been violent towards N.M.'s

mother.  (See *N.M., supra*, at p. 1095.)  Here, there were at least ten instances of domestic violence, nine of which were unreported.  The juvenile court considered the father's history of domestic violence when it decided to grant the father monitored visitation, along with M.C.'s age and the father's unwillingness to cooperate in his case plan.  Thus, the record demonstrates that M.C.'s best interests guided the court's decision, not a desire to punish the father.

There was no abuse of discretion.  The juvenile court acted within its discretion in ordering monitored visitation for the father.

## DISPOSITION

We affirm the juvenile court's orders.


WILEY, J.

We concur:


GRIMES, Acting P. J.


VIRAMONTES, J.

6